MILLER COUNTY (UNITED STATES v.).
See Case No. 15,776.

MILLER, The MINNIE.  See Case No. 9,638.

---

## Case No. 9,598.

### MILLER'S FALLS CO. v. BACKUS.

[5 Ban. & A. 53;[1] 17 O. G. 852.]

Circuit Court, D. Massachusetts.  Dec. 12, 1879.

PATENTS — CHANGE IN FORM AND PROPORTIONS — INVENTION EMPLOYED—BRACES.

1. Mere change in the form and proportions of a known instrument or machine, however great, will often be held to be merely colorable or unessential, unless invention was employed in making the change.

2. Reissued letters patent number 6,350, dated March 23d, 1875, granted to Charles H. Stockbridge for improvement in the stocks or braces for bits and other tools, *held* valid and infringed by the defendant.

[This was a bill by the Miller's Falls Company against Quinby S. Backus to restrain an infringement of certain letters-patent.]

Charles E. Mitchell and J. L. S. Roberts, for complainants.

B. F. Thurston and Livingston Scott, for defendant.

LOWELL, District Judge. The plaintiffs are the owners of the reissued patent No. 6,350, dated March 23d, 1875, granted to them upon an invention of Charles H. Stockbridge, their assignor. The original patent [No. 62,232], dated February 19th, 1867, is not in evidence. I understand that the specification was identical with that of the reissue, with the exception of the claim.

The invention relates to an improvement in the stocks or braces for bits and other tools. The specification and drawings show a socket with the usual rectangular cavity for receiving the shank of the tool. Upon the outside of the socket is a screw. A nut, sleeve or shell screws on to the socket, and beyond the screw is a continuation of the

nut, which contains two dogs pivoted near the base or mouth of the nut, one on each side, and having the ends nearest the socket free to move inward. The end of the socket nearest the nut consists of an annular cam or inverted hollow cone. When the dogs touch the walls of this cam, they are forced inward and come under the shoulder of the shank of the tool which has been placed in the socket, and help to hold it fast. The defendant says that the dogs are intended to act merely as chocks or wedges to engage the shoulder of the tool and prevent its being pulled out, while the plaintiffs insist that the dogs grasp or gripe the round part of the tool and hold it by the force of the gripe as well as by chocking the shoulder, and that their holding power does not depend upon their being directly under the shoulder. The specification is somewhat uncertain upon this point. In one place, it speaks of the "grasping ends" of the dogs, and, in another, of the tool as being locked or fastened in the socket because the ends of the jaws come under the shoulders of the shank of the bit and prevent its withdrawal. I am satisfied that the dogs do or may act, in fact, as grasping devices. Both experts speak of them as such, and the model or specimen, which is admitted to be made after the pattern of the specification, will operate in that way. The plaintiffs must have the advantage of the fact, in the decision of the questions which depend upon it.

Before the time of Stockbridge's invention, Draper and Parker had taken out patent No. 48,763, upon an invention of W. W. Draper, and it is understood that the defendant now owns this patent. The bit-brace of Draper consisted of a socket provided with a screw, and next above the socket—that is, nearer the hand of the operator—was a cone. A nut was adapted to screw on to the socket, and on each side of the middle of the nut, outside of it, were loosely pivoted, by their middle, two pieces of iron, which may be called "dogs" or "jaws," much longer than the nut, and which met, or might meet or nearly meet, below the lower end of the nut. When the nut was screwed upon the socket, the upper ends of the dogs or jaws were forced apart by passing over the cone, and thus the lower ends were forced together and surrounded the tool just below the shoulder, and held it in place. A question was raised concerning this invention, precisely like that in respect to Stockbridge's—whether the jaws can grasp the tool, or only act on the shoulder. Here, again, I am of opinion that the jaws are capable of grasping some tools, and might, without invention, be made to grasp a great variety of sizes of tools, and, therefore, this invention of Draper would anticipate that of Stockbridge, if the claim of the latter should be broadly construed. The claim of Stockbridge is: "The combination of the socket F, having cams b b, and a nut, B, provided with dogs C C, substantially

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[Drawing of reissued patent No. 6,350, granted March 23, 1875, to C. H. Stockbridge, published from the records of the United States patent office.]

*Fig. 2.*

as and for the purposes set forth." The cams here referred to are sections of the annular cam.

It is admitted by the plaintiffs that, in the existing state of the art, his claim must be limited to substantially such a nut or other elements as are described. The defendant admits that he may claim something, but only on the theory that his dogs or jaws serve to chock the shoulder of the tool inserted in the socket. If construed to extend to jaws which grasp the tool, he says it is anticipated by Draper. The defendant has organized, on the inside of a nut or sleeve, a pair of grasping-jaws which work like those of Draper, and has patented this form of brace. The question, therefore, is a very material one, whether, since Stockbridge's patent is held by me to be for grasping as well as chocking contrivance, it is valid. Mere change in the form and proportions of a known instrument or machine, however great, will often be held to be merely colorable or unessential. The inquiry is whether that indescribable quality called invention has been employed in making the change. The Stockbridge brace appears to be more compact, more convenient to handle, and altogether better for use in the ordinary work for which it is designed than that of Draper, and the change is so great, especially in the nut or sleeve, that it cannot, in my opinion, be called a mere constructive modification. The plaintiffs may, therefore, claim such a nut as Stockbridge describes, with the grasping dogs or jaws placed inside the nut or sleeve and forced into their final position by the annular incline, called in the patent the "cams b b."

The defendant has reversed the action of the cone or incline at the end of the socket so as to press apart the upper end of the dogs, and thus to force together their lower ends. This seems to me to be a formal or colorable variation, or, if that expression is too strong, an obvious change of construction, not affecting the combination in its essence. Although the jaws, by themselves considered, are the invention of Draper, they cannot be substituted for the dogs or jaws of Stockbridge on the inside of his nut or sleeve, without infringing his combination. This depends upon the simple but material question of fact, whether Stockbridge's dogs

act as grasping-jaws, which I have already said I find them to be.

Decree for complainants.